ESTATE OF ELIZABETH C. DILLINGHAM, DECEASED, DAN L. DILLINGHAM AND TOM B. DILLINGHAM, COEXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 22368-85, 22369-85. Filed June 25, 1987.

*Julian P. Kornfeld, Clarke L. Randall*, and *Kristen G. Juras*, for the petitioner.
*David G. Hendricks*, for the respondent.

## OPINION

WELLS, *Judge:*\* Respondent determined a deficiency in petitioner's Federal gift tax for the calendar quarter ended December 31, 1980, in the amount of $70,841.04, and an addition to tax pursuant to section 6651(a)[1] in the amount

---

\*By order of the Chief Judge, these cases were assigned to Judge Wells for decision and opinion.

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect on the date of the decedent's death with respect to the estate tax deficiency and in effect during the calendar quarter in issue with respect to the gift tax deficiency. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

of $17,710.26. Respondent also determined a deficiency in petitioner's Federal estate tax in the amount of $369,644.05.

After concessions, the sole issue to be decided is whether a noncharitable gift made by check is complete for Federal gift and estate tax purposes when the check is delivered to the donee.

These cases were submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference.

Petitioner is the Estate of Elizabeth C. Dillingham, deceased. See *Estate of McElroy v. Commissioner*, 82 T.C. 509, 510 (1984). (Elizabeth C. Dillingham is hereinafter referred to as the decedent.) The decedent's estate is represented by Dan L. Dillingham and Tom B. Dillingham, coexecutors, who were residents of Enid, Oklahoma, at the time the petitions in these cases were filed. The decedent was a resident of Enid, Oklahoma, on June 7, 1981, the date of her death.

On or about December 24, 1980, the decedent delivered six checks in the following amounts to the following six individuals (the six checks are hereinafter collectively referred to as the checks and the six individuals are hereinafter collectively referred to as the donees):

| Name | Amount |
|---|---|
| Ethel B. Gauley | $3,000 |
| Tom B. Dillingham | 3,000 |
| Dan L. Dillingham | 3,000 |
| Kay C. Dillingham | 3,000 |
| Robert Hutton | 3,000 |
| Jeanne G. Dillingham | 3,000 |
| | 18,000 |

On or about January 28, 1981, the donees presented the checks to the drawee bank for payment and the checks were paid.

On or about January 28, 1981, the decedent delivered an additional check in the amount of $3,000 to each of the donees (these six additional checks are hereinafter collectively referred to as the additional checks). On or about January 28, 1981, the donees presented the additional checks to the drawee bank for payment and the additional checks were paid.

With respect to the gift tax deficiency, the parties have agreed that if the delivery of the checks constituted gifts in 1980, the gifts qualify for the annual exclusion in the amount of $3,000 per donee pursuant to section 2503(b). Conversely, if the delivery of the checks constituted gifts in 1981, the gifts do not qualify for the annual exclusion.

With respect to the estate tax deficiency, the parties have agreed that if the delivery of the checks constituted gifts in 1980, (1) petitioner has not omitted $36,000 (the sum of the checks and the additional checks) from the decedent's gross estate, (2) the 6-year period of limitations on assessment and collection under section 6501(e)(2) is not applicable in the instant case, and (3) the assessment of the estate tax deficiency determined by respondent in the statutory notice of deficiency is barred by the 3-year period of limitations under section 6501(a). Conversely, if the delivery of the checks constituted gifts in 1981, (1) $36,000 was omitted from the decedent's gross estate, (2) the 6-year period of limitations on assessment and collection under section 6501(e)(2) is applicable in the instant case, and (3) the assessment of the estate tax deficiency determined by respondent in the statutory notice of deficiency is not barred by that period of limitations.

Petitioner contends that the gifts represented by the checks were complete in 1980 because the payment of the checks by the bank upon which they were drawn relates back to the date the checks were delivered. Respondent contends that the gifts were not complete in 1980 because there is no relation back of the payment of the checks to the date the checks were delivered, and that the decedent did not part with dominion and control over the checks in 1980 since she retained the power to stop payment on the checks.

Section 2501[2] imposes a tax on the transfer of property by gift. Section 2511[3] defines the transfers to which the

---

[2]SEC. 2501. IMPOSITION OF TAX.
   (a) TAXABLE TRANSFERS.—
      (1) GENERAL RULE.—A tax, computed as provided in section 2502, is hereby imposed for each calendar quarter on the transfer of property by gift during such calendar quarter by any individual, resident or nonresident.
[3]SEC. 2511. TRANSFERS IN GENERAL.
   (a) SCOPE.—Subject to the limitations contained in this chapter, the tax imposed by section

gift tax applies. Section 25.2511-2(b), Gift Tax Regs., provides, in relevant part, as follows:

As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust of otherwise) the donor reserves any power over its disposition, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case. Accordingly, in every case of a transfer of property subject to a reserved power, the terms of the power must be examined and its scope determined. * * *

Consistent with petitioner's contention, if the payment of the checks relates back to the delivery of the checks, the "transfer of property by gift" would have been effected in 1980, rather than in 1981.[4] Nevertheless, for reasons discussed herein, we hold that the payment of the checks does not relate back to the delivery of the checks in the context of the facts presented in these cases.

The relation back of payment of checks to the date of their delivery is commonly referred to as the "relation back doctrine." The relation back doctrine was first applied by this Court to gifts in *Estate of Spiegel v. Commissioner*, 12 T.C. 524 (1942). In *Spiegel* we allowed a charitable deduction for Federal income tax purposes in calendar year 1942 where the donor delivered two checks to a charitable donee in 1942, but the checks were not cashed until 1943 (one of the checks was cashed before the donor's death and the other check was not cashed until after the donor's death). We held that payment of the checks by the drawee bank related back to the time when the checks were delivered.

The relation back doctrine was then extended to charitable contributions for Federal estate tax purposes in *Estate*

2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible * * *

[4]It is clear that where a gift is made by way of the delivery of a donor's personal check to a donee, the "transfer of property by gift" is the transfer of the funds represented by the check. It should be noted, however, that it is not clear from the record in these cases whether the checks were the decedent's personal checks or third-party checks. We note that the explanations of items attached to the notices of deficiency refer to "her checks," i.e., the decedent's checks, which we assume for purposes of these cases means that the checks were drawn on the decedent's personal checking account. To assume otherwise would be inconsistent with the fact that petitioner bears the burden of proof in this case. Rule 142(a).

*of Belcher v. Commissioner*, 83 T.C. 227 (1984), where the donor delivered checks to charities and the checks were not cashed until after the donor's death. We held that payment of the checks by the drawee bank related back to the date of delivery so as to exclude the amount from the donor's gross estate. However, we concluded with the following note of caution:

One final word. In *Spiegel*, we observed that "Charitable contributions may be gifts in the broad sense but for tax purposes they fall into a special class and there is special legislation dealing with them. What we say here is intended to apply to charitable contributions and not necessarily to all categories of gifts." Similarly, we intend our holding in this case to apply only to charitable contributions for estate tax purposes. Sufficient unto another day the question of includability of noncharitable gifts under similar circumstances. [*Estate of Belcher v. Commissioner*, 83 T.C. at 238-239.]

Since our decision in *Belcher*, Federal courts in three circuits have considered the issue whether the relation back doctrine applies to noncharitable gifts by check. *McCarthy v. United States*, 806 F.2d 129 (7th Cir. 1986), revg. 624 F. Supp. 763 (N.D. Ill. 1985); *Bacchus v. United States*, an unreported case (D. N.J. 1985, 57 AFTR2d 86-1519, 86-1 USTC par. 13,669); *Cullis v. United States*, an unreported case (N.D. Ohio, 57 AFTR2d 86-1510, 85-2 USTC par. 13,645). The Circuit Court in *McCarthy* and the District Court in *Cullis* refused to extend the relation back doctrine to noncharitable gifts by check, while the District Court in *Bacchus* did extend the doctrine to noncharitable gifts by check.

The Circuit Court in *McCarthy* voiced the following concern over extending the relation back doctrine to noncharitable gifts by check:

By issuing a check to a noncharitable donee with the understanding that it not be cashed until after his death, a decedent may effectively bequest up to $10,000 per donee, thus avoiding the estate tax consequences normally attending such transactions. Clearly, section 2035(b)(2) was never intended to operate in such a manner. Only after a donee has parted with complete dominion and control of funds does section 2035(b)(2) exempt them from the general rule that all gifts made within 3 years of death are to be included in the donor's gross estate. I.R.C. [sec.] 2035(a) (1985). [*McCarthy v. United States, supra* at 132.]

This Court expressed a similar concern in *Estate of Belcher v. Commissioner, supra* at 232.

Because the checks in the present cases were cashed before the decedent's death, the concern of this Court in *Belcher* and the Circuit Court in *McCarthy* that the donees might have a secret agreement with the donor that the checks would not be cashed until after the donor's death is not present. To that extent these cases are distinguishable from *McCarthy* and *Belcher*.

However, a similar concern is present in these cases since the checks were not cashed until 35 days after the delivery of the checks to the donees. There is no evidence explaining the reason for the delay. The delay,[5] connected with the failure of the donees to cash the checks until the additional checks were delivered to the donees on January 28, 1981, casts doubt as to whether the checks were *unconditionally* delivered. Furthermore, we do not know whether the decedent's checking account had sufficient funds to cover the checks at the time the checks were delivered. We do not even know whether the decedent intended to make a gift by delivering the checks, an essential element in proving a gift (although this might be presumed from the conclusive manner in which the parties refer to the checks as gifts).[6] Many of the facts that do not appear in the record in these cases were part of the records in *Siegel* and *Belcher*. Petitioner has the burden of proof under Rule 142(a). See also *Welch v. Helvering*, 290 U.S. 111 (1933). In the context of the instant case, petitioner was required to prove *unconditional* delivery of the checks (see *Estate of Belcher v. Commissioner*, 83 T.C. at 235-236; *Estate of Spiegel v. Commissioner*, 12 T.C. at 533), which petitioner has failed to do. Simply put, petitioner's wholesale reliance on the fact of delivery of the checks, alone, does not warrant the extension of the relation back doctrine to these cases.

Petitioner cites *Don E. Williams Co. v. Commissioner*, 429 U.S. 569 (1977), in support of its contention that the relation back doctrine applies to each gift in the present

---

[5]Because the checks were issued more than 30 days before they were cashed, under sec. 3-304(3)(c), Okla. Stat. Ann. tit. 12A (West 1963), the checks were no longer presumed to have been outstanding for a reasonable time under State law. See also U.C.C. sec. 3-304(3)(c) (1962).

[6]See also note 4, *supra* (indicating that the record is not clear as to whether the checks at issue were drawn on the decedent's personal checking account).

cases. In *Don E. Williams Co.*, the Supreme Court distinguished between a promissory note and a check, stating at pages 582 and 583:

The three Courts of Appeals seemed to equate a promissory note with a check. The line between the two may be thin at times, but it is distinct. The promissory note, even when payable on demand and fully secured, is still as its name implies, only a promise to pay, and does not represent the paying out or reduction of assets. A check, on the other hand, is a direction to the bank for immediate payment, is a medium of exchange, and has come to be treated for federal tax purposes as a conditional payment of cash. *Estate of Spiegel v. Commissioner*, 12 T.C. 524 (1949) * * *

However, *Don E. Williams Co.* is distinguishable from the present cases because that case involved the funding of a pension plan, not a gift made by way of a check. Thus, the statement by the Court in *Don E. Williams Co.* does not support petitioner's contention, particularly in light of petitioner's failure to prove unconditional delivery of the checks in the present cases.

We emphasize that because petitioner has failed to prove unconditional delivery of the checks in the present cases, we do not here decide under what circumstances, if any, the relation back doctrine applies to a gift by way of check to a noncharitable donee when the check is unconditionally delivered to the donee. We only hold that petitioner has failed to prove unconditional delivery of the checks to the donees in the present cases, and that the relation back doctrine will therefore not be extended to these cases.

Because the relation back doctrine does not apply to the present cases, we must look to the relevant State law to determine when the decedent parted with "dominion and control" over the funds in her checking account for purposes of section 25.2511-2(b), Gift Tax Regs. See *Burnet v. Harmel*, 287 U.S. 103, 110 (1932) (stating that State law creates legal interests, and Federal law determines how and when those interests should be taxed).

The Oklahoma Supreme Court has not directly addressed the issue of when the delivery of a check becomes a completed gift (i.e, when a donor parts with dominion and control over the funds that a check purports to transfer). Therefore, we must decide what the law in Oklahoma would

be on that issue. *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967).

Section 3-409(1), Okla. Stat. Ann. tit. 12A (West 1963), provides that a check "does not of itself operate as an assignment of any funds in the hands of the drawee [bank] * * * , and the drawee [bank] is not liable on the instrument until he accepts it." See also U.C.C. sec. 3-409(1) (1962). Thus, if for some reason decedent's bank did not honor the checks (e.g., based upon an order from the decedent to her bank to stop payment on the checks), the donees would not have been considered the owners of the funds in decedent's checking account, and could not have held the decedent's bank liable for the funds.

Furthermore, under section 3-302(1)(a), Okla. Stat. Ann. tit. 12A (West 1963), a payee does not become a holder in due course where no consideration is given to a drawer of a check by the payee in exchange for the drawer's check. See also U.C.C. sec. 3-302(1)(a). A payee who is not a holder in due course takes a check subject to the defense of want or failure of consideration under section 3-306, Okla. Stat. Ann. tit. 12 (West 1963). See also U.C.C. sec. 3-306. In the present cases, the donees were not holders in due course because they did not give consideration to the decedent for the checks. Therefore, if the decedent exercised her right under section 4-403, Okla. Stat. Ann. tit. 12A (West 1963) (see also U.C.C. sec. 4-403), to stop payment on the checks, she could have successfully defended herself against claims made by the donees based upon the checks by asserting the defense of want or failure of consideration.

Courts in jurisdictions with laws similar to, or the same as, those codified in Oklahoma have determined that "the gift of [a] donor's own check is but [a] promise of a gift and does not amount to a completed gift until payment or acceptance by the drawee [bank]." 38 C.J.S. Gifts, sec. 55 (1943) (fn. ref. omitted). See also *Felder v. Felder*, 71 Ga. App. 860, 32 S.E.2d 550 (1944); *In Re Brown's Estate*, 159 Kan. 408, 155 P.2d 445 (1945). In fact, we have found no State court that holds that a completed gift occurs upon delivery of a donor's personal check. We therefore conclude that the highest court of the State of Oklahoma would hold that a gift by way of a donor's personal check is not

complete upon delivery of the check because the donor did not part with dominion and control over the property represented by the check.

Based upon the above analysis, we hold that the decedent parted with dominion and control over the property represented by the checks for purposes of section 25.2511-2(b), Gift Tax Regs., upon payment of the checks by decedent's bank during 1981, and that the transfer of property by gift was complete at that time.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*